## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA GAINESVILLE DIVISION

| | | |
|---|---|---|
| DAVID EUGENE LOVE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **JURY  DEMANDED** |
| DANE KIRBY, SHERIFF OF FANNIN | : | |
| COUNTY in his Personal Capacity; SGT | : | |
| KACY GODSEY, Detention Officer | : | |
| in his Personal Capacity; SGT. KATIE | : | |
| WRIGHT in her Personal Capacity; OFFICER | : | |
| PONCE in his Personal Capacity;. | : | |
| OFFICER DEPUY in his Personal Capacity; | : | |
| JOHN DOE #1 through 6 in their personal | : | |
| capacities, | : | |
| Defendants. | : | |

## COMPLAINT
## 42 USC § 1983 & OTHER LAW
## <u>VERIFIED</u>

COMES NOW, David Eugene Love and shows:

### JURISDICTION & VENUE

1.  The litigated incidents, including U.S. Constitutional violations against this Plaintiff, happened between about May 26, 2022 through August 11, 2022 at the Fannin County Detention Center, 645 W. First Street, Blue Ridge GA 30513 (Detention Center), where the Defendant Sheriff Dane Kirby has his office and

jail.

## GENERAL ALLEGATIONS

2.     At all times relevant Defendant Godsey was a Detention Officer (D/O) at the

Detention Center.

3.     At all times relevant Defendant Wright was a D/O at the Detention Center.

4.     At all times relevant Defendant Ponce was a D/O at the Detention Center.

5.     At all times relevant Defendant Dupey was a D/O at the Detention Center.

6.     At all times relevant Defendant John Doe 1 *a/k/a* Nurse Tonya was a health care

worker at the Detention Center.

7.     At all times relevant Defendant John Doe 2 *a/k/a* Nurse Moore was a health care

worker at the Detention Center

8.     At all times relevant Defendant John Doe 3 was a health care worker, on

information and belief a physicians' assistant at the Detention Center.

9.      At all times relevant Defendant John Doe 4 was a doctor at the Detention

Center.

10.     During the above-stated dates, Mr. Love was an inmate at the Detention Center

awaiting trial or bond.

11.    During the morning of May 26, 2022, Love was attacked in his cell, C-1 and

beaten very seriously by two other inmates.

12.    Love suffered very serious and very painful injuries in the attack, including heavy

blows to his face that caused left orbital floor fracture and nasal bone fracture.

13.   Love's left arm was repeatedly stomped on by the two attackers after he was knocked to the floor by them.

14.   Though he did not know at the time, he had also suffered a serious left biceps tear.

15.   Mr. Love is left handed.

16.   The injuries suffered by Love were serious enough to require medical attention by Defendants Kirby (to order medical treatment), the medical Defendants and the D/O Defendants who received and/or responded to Love's report and saw the assault and evidence on their security system and when they went to C-Dorm, Cell C-1. *Estelle v Gamble* 429 US 97 (1976); *Brown v Hughes* 894 F.2d 1533 (1990).

17.   At some point after the attackers fled their crime scene, Love managed to get to the C-Dorm intercom and called for help.

18.   Defendants SGT Wright and D/O Ponce were reportedly first on scene in response.

19.   There was blood on the floor in Love's cell, from the vicious attack as shown by Defendants' own records. [Altercation in C-Dorm; Supplemental Report by Godsey.]

20.   Godsey allegedly upon request of Wright took Love away to the booking area to

look over his injuries.

21.    Godsey reported that he documented blood on Love's face and took pictures of Love's cell and of Love with his body camera.

22.    On information and belief, Godsey and other Defendants looked at the Detention Center video after the attack and saw all or part of the attack.

23.    On information and belief, other unknown D/Os saw the attack as it happened on video and events or moves leading up to it, but did nothing to protect Love.

24.    Love told Godsey the names of the two attackers.

25.    Love told Godsey and the others how he was beaten and hit in the face.

26.    Love told Godsey and the others how the attackers stomped on his arm

27.    Love requested treatment and was allowed to see Nurse Tonya.

28.    Love told Nurse Tonya about the heavy blows to his face and how his arm was stomped and about his pain and suffering.

29.    Nurse Tonya took pictures of Love's injured face and injured left arm.

30.    That day the Detention Center transported Love to Fannin Regional Hospital emergency department where he received examination and treatment for his facial injuries.

31.    Love asked about treatment for his arm/shoulder that had gotten swollen and was also very painful.

32.    Love got pills believed to be pain killers at some point in time that day.

33. On return to the Detention Center, Love complained heavily for he had bad pain in his left arm and shoulder too.

34. On divers dates, Love sent an estimated 10-12 or more emails on the Kiosk computers that the inmates had controlled access to, to Detention Center staff about the serious, severe pain in his arm and shoulder.

35. Love contacted Nurse Tonya over and over about his painful arm.

36. On information and belief, the emails were received by the medical John Doe Defendants, by Sheriff Kirby and by the unknown administrative John Doe Defendants who were on the Sheriff's staff to handle inmate complaints.

37. When another nurse, Nurse Moore returned from vacation, she reported to Love that she was not sure if there was anything that could be done for him, ostensibly in response to his emails and other complaints about his arm/shoulder.

38. Love kept complaining about the severe pain in his arm and shoulder.

39. On or about June 9, 2022, Love was taken for x-rays of his left shoulder and left humerus area.

40. The x-rays showed the bones to be "normal."

41. But the severe pain in Love's arm continued and Love continued to complain and ask for help.

42. On information and belief, one of the nursing staff sent off a fax request on the Doctor's order for an MRI of Love's arm on June 10, 2022.

43.  On or about July 1, 2022, the MRI of the left arm was done.

44.  The MRI showed the serious biceps tear, believed by Love to the etiology of the pain Love had been incessantly suffering and complaining of.

45.  From the date of the incident through the date of the MRI and his release date, August 11, 2022, Love's arm was swollen or abnormal and painful and weak.

46.  That there was a problem with the arm was open and obvious for Defendants to see by obvious clinical signs including the pain and the swelling, the documented aggravated assault incident and the serious facial injuries.

47.  The serious facial injuries that Love suffered were strong indicators that there could have been serious injuries to his arm as well.

48.  The MRI results July 1, 2022  as shown above were also plain and palpable evidence of the serious biceps tear and the need for immediate medical intervention.  *Estelle.*

49.  The biceps tear was a serious injury that required attention as a matter of Love's constitutional rights.  *Id.*; *U.S. Const. Amendment Eight* and other law including because Love was not a convicted prisoner.

50.  On or about July 1, 2022 when the biceps tear was seen on MRI, one of the nurses told Love that he would be taken to an orthopedist to treat the biceps tear injury.

51.  But in spite of his repeated complaints and follow-ups, Love was never taken to

get treatment for the arm.

52. On August 11, 2022, upon a negotiated plea in Fannin County Superior Court that day, when Love was being released from the Detention Center, Love asked a D/O about the promised orthopedic treatment for his arm.

53. The D/O in the release crew told Love then and there that he was on his own now; and that no treatment would be provided by the Detention Center.

## COUNT I - DELIBERATE INDIFFERENCE
## UNNECESSARY AND WANTON INFLICTION OF PAIN

54. As shown the medical Defendants, the D/Os named and the Sheriff, in particular had knowledge of Love's need for medical care for his left arm.

55. The deliberate indifference was particularly manifest when the MRI showed the biceps tear on 07/01/2022, yet those Defendants directly and indirectly responsible as discovery should show intentionally refused to provide the medical care needed.

56. Defendants thereby unnecessarily and wantonly inflicted pain upon Love over time.

57. In addition, on information and belief, by the time he was released on August 11, 2022 without treatment for the biceps injury, the situation was as such that the time window for effective treatment had either closed or otherwise was substantially compromised so that it was more likely than not that the biceps tear

can no longer be successfully treated.

58.    The extended and repeated denial of medical care for the serious biceps injury

comprised constitutional violations against Love, including deliberate indifference

by the Defendants and he brings this suit for compensation under § 1983; *Brown*

supra; *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir.1988); *Ancata v.*

*Prison Health Svcs.*, 769 F.2d 700, 704 (11th Cir.1985). *Merritt v. Athens*

*Clarke County*, 233 Ga.App. 203, 205(1), 504 S.E.2d 41 (1998); *Adams v. Poag*,

61 F.3d 1537, 1544 (11th Cir.1995).

59.    Love prays for damages according to the enlightened conscience of the jury.

## COUNT II - NEGLIGENT FAILURE TO ACT

60.    The medical Defendants in particular, the Sheriff and the D/Os knew or should

have known of the substantial risk of serious harm to Love due to failure to

promptly or timely treat the biceps injury.

61.    This comprised a duty of care that the Defendants owed to Love at all times while

he was in their care under Constitutional protection awaiting trial.

62.    The Defendants breached the duty of care by failing to promptly or timely

provide treatment for the biceps tear.

63.    The breach legally and proximately caused prolonged pain.

64.    The breach legally and proximately caused disability loss.

65.    Now Love has ongoing pain in the left arm.

66.    Now Love has weakness in his left arm and can not use it to lift weights much heavier than a gallon of milk, though he is otherwise healthy and left handed.

67.    The affected left biceps area lost about a third of its size.

68.    Love has been challenged to find and hold employment that he was able to do prior to the said negligence of the Defendants, legally and proximately because of the Defendants' said negligence.

69.    But for the said negligence by Defendants the damages to Love would not have happened, or would have been substantially reduced.

70.    Love prays for damages according to the enlightened conscience of the jury. *Howard v. City of Columbus*, 239 Ga. App. 399, 404, 521 S.E.2d 51 (1999); *Farmer v. Brennan*, 511 U.S. 825, 837(B)(1), 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) and other law.

71.    On release, Love was not provided the medical records and MRI results to facilitate treatment by other health care professionals seeing that the Detention Center was not going to do it.

72.    That was also a part of the continued constitutional violations against Love.

73.    On or about September 14, 2022 Love timely presented his *ante litem* notice and claim which was denied.

WHEREFORE, Plaintiff prays for:

(1)    service of process on Defendants, or acceptance of waivers and a jury trial;

(2)    judgment against Defendants an amount that would fairly compensate Plaintiff for

his damages, special damages and other losses;

(3)    punitive damages against Defendants;

(4)    all costs and expenses of litigation, including Plaintiff's attorney fees; and

(5)    such other relief against Defendants as the court finds just and appropriate.

March 22, 2024

Respectfully submitted
L.  BARRINGTON HENDRICKS, P.C.
/s/ Louie Hendricks
By:  Louie  Hendricks, Bar No. 349395
Attorney for Plaintiff
P. O. BOX 360881
DECATUR, GA 30036-0881
Ph (404) 501- 9292.  Fax 404-501-9280
louiehendricks@bellsouth.net

## VERIFICATION OF DAVID LOVE

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, DAVID LOVE, the Plaintiff in the Complaint *Love vs Dane Kirby, former Sheriff of Fannin County et al.* who upon being duly sworn deposes and says that the facts stated in the Complaint as amended are true and correct to the best of her own personal knowledge.

_____
Signature

_____
Printed Name

Sworn to and subscribed before me this

22_____ day of __March_____, 2024.

Notary Public: _James Adam Reichert_____

My Commission Expires: _12-6-2027_____